# EXHIBIT 4

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
CALENDAR: 05
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY
## CHANCERY DIVISION

FOREST PRESERVE DISTRICT
OF COOK COUNTY

                    Petitioner,

      v.

EMPLOYEE APPEALS BOARD,
an administrative agency of the
State of Illinois; and
DEBORAH ANTLITZ,

                    Respondents.

No. 16-CH-14861
Honorable Neill Cohen
EAB No. 2016-01

-------------------------------------------------

DEBORAH ANTILTZ,

                    Petitioner,

      v.

EMPLOYEE APPEALS BOARD,
an administrative agency of the
State of Illinois; and
FOREST PRESERVE DISTRICT
OF COOK COUNTY,

                    Respondents.

No. 16-CH-15524
Honorable Neill Cohen
EAB No. 2016-01

## BRIEF IN RESPONSE TO FOREST PRESERVE DISTRICT'S PETITION FOR ADMINISTRATIVE REVIEW[1]
## and
## MEMORANDUM IN SUPPORT OF DEBORA ANTLITZ'S PETITION FOR ADMINISTRATIVE REVIEW

Respondent, DEBORAH ANTLITZ ("Antlitz"), pursuant to the Administrative Review

Act, 735 ILCS 5/3-101, *et seq.,* responds to the petition of the FOREST PRESERVE DISTRICT

---

[1] References to the Record on Appeal are noted as "EAB p. __."

OF COOK COUNTY, ILLINOIS (the "District") seeking to reverse the October 26, 2016 Order

of the EAB, and reinstate the discharge of Antlitz.

Petitioner, DEBORAH ANTLITZ("Antlitz"), pursuant to the Administrative Review Act,

735 ILCS 5/3-101, *et seq.,* complaints of the Respondents, EMPLOYEE APPEALS BOARD, an

administrative agency of the State of Illinois ("EAB"), and the FOREST PRESERVE DISTRICT

OF COOK COUNTY, ILLINOIS (the "District"), seeking to reverse part of the October 26,

2016, Order of the EAB, and reverse the suspension assessed to Antlitz. In support and reply

Antlitz states as follows:

## STATEMENT OF FACTS

Antlitz has been an ecologist with the District since 1991. As an ecologist, her duties

consist of: (1) prioritizing and directing ecological restoration resources; (2) communicating

effectively with staff, volunteer stewards, outside agencies, and the general public, in all matters

regarding the ecology of the District; (3) collaborating with Resource Management staff on the

District's prescribed burning program; (4) designing and overseeing management plans to inform

responsible land usage; (5) protecting and preserving the diverse habitats of the forest preserve;

and (6) assessing the ecological heath of the District's land holdings.

On February 4, 2016 Charles O'Leary, Deputy Director Resource Management, issued

Antlitz a Disciplinary Action Form. The District cited to three different serious infractions to

sustain their discharge.

1. On January 19, 2016, Antlitz forwarded an email of an overdue plan draft to her
   supervisor and other parties required to sign off for final approval. The draft was not
   marked confidential, nor were there instructions that it was not to be shared with the
   District's partners. The draft included a link to a public document released by the
   Inspector General's Office commenting on the qualifications of unnamed District
   employee. The District found that these actions by Antlitz violated Rules 8.03(b)(3),
   8.03(c)(1), 8.03(c)(2), 8.03(c)(11), Rule 8.03(c)(14) and Rule 8.03(c)(16);

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 2 of 14

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 2 of 14

2.  Under her responsibility as an ecologist, Antlitz drafted the work order for the Busse Forest South project. The final work order mandated "to avoid ash seedlings." After the work commenced, Antlitz was asked to monitor the site and review the ongoing work. The contractors would often ask Antlitz questions regarding the work order on these site visits. During a site visit on January 22, 2016, Antlitz learned that the contractors had strayed from the work order and cut down several elm trees. During that same visit the contractors questioned Antlitz about cutting down several dead ash trees, also not included in the work order. Antlitz instructed the contractor that in order to change the work order he would need to contract Troy Showerman for approval. The District found that these actions by Antlitz violated Rules 8.03(b)(3), 8.03(c)(2) and 8.03(c)(14);

3.  On January 25, 2016, Antlitz conducted her annual performance review with Charles O'Leary. After Antlitz had added her comments and both parties had signed the review, Antlitz inquired about the status of a project that she believed had changed, when O'Leary said there was no change Antlitz gave O'Leary a copy of an email indicating that a change had occurred and the Resource Management Department and Charles O'Leary as possible subjects of investigation for violating the Endangered Species Act. Antlitz inquired into whether the changes noted in the email had occurred. The District found that these actions by Antlitz violated Rules 8.03(b)(3) and 8.03(c)(11).

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 3 of 14

Antlitz was terminated on March 28, 2016. She filed a timely appeal with Employee Appeals Board ("EAB"). On August 24, 2016, the Administrative Law Judge ("ALJ") assigned by the EAB heard the parties' evidence. On October 3, 2016, the ALJ issued an opinion recommending that Antlitz be reinstated with back pay minus a 29-day suspension. On October 26, 2016, the EAB accepted the ALJ's recommendation.

## STANDARD OF REVIEW

The findings of an administrative agency on questions of fact are *prima facie* correct. *Oster v. Police Board*, 22 Ill. App.3d 403, 407, 318 N.E.2d 34, 37 (1st Dist. 1974). "On administrative review, it is not a court's function to reweigh the evidence or to make an independent determination of the facts, but merely to ascertain whether the findings and decisions of the agency are against the manifest weight of the evidence." *Gersch v. Illinois Dept. of Professional Reg.*, 308 Ill. App. 3d 649, 659, 720 N.E.2d 672, 681 (1st Dist. 1999). "An

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 3 of 14

administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Clark v. Illinois Human Rights Comm'n*, 312 Ill. App. 3d 582, 586, 728 N.E.2d 582, 587 (1st Dist. 2000).

Administrative decisions based on mixed questions of fact and law are reviewed on a "clearly erroneous" standard. *AFM Messenger Service, Inc. v. Dept. of Employment Security*, 198 Ill. 2d 380, 391-95, 763 N.E.2d 272, 279-282 (2001). An agency's decision is clearly erroneous "only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed." *Id.* 198 Ill. 2d at 395, 763 N.E.2d 272, 282. "If the record contains evidence to support the agency's decision, it should be affirmed." *Gersch v. Illinois Dept. of Professional Reg.*, 308 Ill. App. 3d 649, 659, 720 N.E.2d 672, 681 (1st Dist. 1999).

<div align="center">

## ARGUMENT

</div>

**I.  THE HEARING OFFICER'S FINDING OF NO JUST CAUSE IS SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE**

In order to sustain the termination of a career service employee, the employer must establish "just cause" for the discharge. See Cook County Personnel Rules 8.43(f)(1)(a),(b) (EAB p. 544). Just Cause for discharge is defined by the Personnel Rules as:

a. Repetition of the same or similar infractions, or a combination of infractions of the Rules of Conduct for which there has been progressive disciplinary action. An employee who has been previously suspended may be subject to discharge for the next offense; or

b. Commission of an infraction considered "Major Cause" as defined previously.

Emphasis added. EAB p. 670.

The District failed to present sufficient evidence to sustain a finding of "just cause" under both subsections. The EAB's failure to find just cause is not clearly erroneous and against the manifest weight of the evidence.

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 4 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 4 of 14

## A. FAILURE TO FIND JUST CAUSE FOR TERMINATION OF ANTLITZ REGARDING THE DRAFTING OF THE 5-YEAR PLAN WAS NOT CLEARLY ERRONEOUS

The District was not able to meet their burden of proving just cause for the termination of Antlitz. The District presents the legal conclusion that Antlitz has great disdain for her supervisor, but puts forth no credible evidence to support such a finding. They point with great tenacity to the incident regarding the emailing of a 5-year plan draft to outside parties as proof thereof. Deliberately ignoring the fact the recipients of said draft were the very people required to sign off on the final draft before it could be submitted for approval to the State. Also, Antlitz testified that the document requires you document anything that went wrong with the last five year plan and what is planned to correct that issue. (EAB pp 255 ¶¶8-pp256 ¶9). Antliz forwarding the documents was only done to direct questions to persons more knowledgeable to answer them and to try to have all decision makers reach a consensus to move an already overdue project forward. (EAB pp. 131 ¶13-132 ¶¶ 1-22; EAB pp. 331¶ 4-333 ¶¶ 1-7.) While the District attempts to point to Antlitz as the cause of the delay, it is clear that Mr. O'Leary had this draft for review and comment since December or before, and chose not to respond until January thus making the draft a month overdue. (EAB pp 252 ¶¶12-15; EAB pp 353 ¶23-356 ¶9.)

Antlitz made all the easy changes and circulated the draft with the remaining comments to the persons required to sign off on it to get their input relating to the matters they had the most knowledge about and were better equipped to answer. (EAB pp. 332 ¶23–EAB p. 333 ¶4.)

Antlitz's supervisor had questions concerning butterflies being reintroduced, so Antlitz forwarded the draft to Doug Taron, an expert in the field with over 30 years' experience. (EAB pp. 252 ¶ 17-22.) Her supervisor also had questions concerning endangered species of birds, so Antlitz forwarded the draft to Steve Byers, the representative at the Illinois Nature Preserve

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 5 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 5 of 14

Commission. (EAB pp. 252 ¶ 23 – pp. 253 ¶ 23.) Antlitz only forwarded the draft to the members that were required to sign off on the finalized version. (EAB pp. 332 ¶ 14-21.) Her only goal was to facilitate a collaborate process between all the members in order to get the overdue draft to its final stages. (EAB pp. 332 ¶ 14-21.) Antlitz's supervisor made the sole decision to table the draft, despite all other members ready and willing to proceed forward. (EAB pp 263 ¶ 9-14.) The ALJ correctly determined based on the evidence presented there was no just cause for Antlitz's termination.

The District argues that defying a supervisor's directive is cause for termination, while citing only an unpublished opinion[2] in violation of Illinois Supreme Court Rule 23 as precedent. *See* ILCS S. Ct. Rule. 23 (forbids citation of an unpublished opinion as precedent.) However, they produced no evidence that Mr. O'Leary told Antlitz not to forward the draft to persons who could provide the best answers to her questions. At best they could argue that Antlitz was argumentative, however that is not sufficient for discharge. *Gee v. Board of Review*, 136 Ill. App. 3d 889 896, 483 N.E.2d 1025, 91 Ill. Dec. 539 (1985). The ALJ correctly determined that these claims do not rise to the level to sustain Rule 8.03(b)(3) – fighting or disruptive behavior.

### B. THE ALJ PROPERLY ADDRESSED THE CLAIM OF HARASSMENT AGAINST CO-WORKER LAURA ANCHOR

In October of 2012, Antlitz filed a discrimination complaint against a male co-worker with the District's Human Resources Department. (EAB pp. 295 ¶ 4-22.) She received a response from Human Resources on October 22 that her superiors had been informed of the discrimination complaint. (EAB pp. 296 ¶ 2-8.) Later that same day Antlitz received a Notice of Disciplinary Hearing. (EAB pp. 296 ¶ 8-11.) Ultimately she was suspended for three days for

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 6 of 14

---

[2] *Little v. Illinois Civil Service Com'n*, 2013 IL App. (1st) 123655-U

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 6 of 14

allegedly interfering with a contractor, coincidently under the authority of the male co-worker she filed a discrimination claim against, and making 'disparaging comments' against other District employees. (EAB pp. 113 ¶ 17-21; EAB pp. 296 ¶ 13-19.) Antlitz was instructed that any similar behavior could lead to further discipline. *Id*. District argues that the ALJ failed to take the 2012 incident of harassment into consideration in weighing the 2016 claim of harassment.

The Recommended Decision makes mention of the second basis for Antlitz's three day suspension in 2012, that she "made disparaging remarks directed toward other District staff involved in that project." (EAB pp. 296 ¶ 13-19.) The District claims they presented ample evidence of Antlitz's intention to embarrass and harass another employee they identify as Ms. Anchor. (EAB pp. 172 ¶12 – 173 ¶11.) They claim in 2012 she made these comments to a third-party contractor and he was "very uncomfortable." (EAB pp. 113 ¶ 3-7; EAB pp 185 ¶ 7-12.) The District never specified what exact remarks were made, other than alleging they were 'disparaging'.

In 2016, the District claimed that Antlitz harassed Ms. Anchor again by attaching a link to a 2012 Inspector General investigative report, which questioned the educational qualifications of the District's Wildlife II Biologist and also acknowledged the value of the employee to the District's operations, to a plan draft she disseminated to third parties. (EAB pp. 130 – 131 ¶6.) This link did not name Ms. Anchor by name. (EAB pp. 602-603.) The Inspector General Report was a government published document available for anyone to view. Furthermore, Antlitz did not contribute in any way to the findings expressed in the report. It was the opinion of the Inspector General Office that the District's Wildlife II Biologist was unqualified for the position because of her failure to satisfy the educational requirements. A claim that has never once been contradicted by the District. Instead of accusing the report of containing false accusations, they

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 7 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 7 of 14

merely claim that the report's finding could potentially be harmful to their reputation and that of Ms. Anchor, who again was never identified by name. There was no testimony to any specific harmful repercussions stemming from the report being linked to in the comments. (Antlitz Order, pp. 9.)

The District's evidence consists only of a past suspension supported by a foundation of unsubstantiated and unreliable hearsay and the propagation of a public investigative report Antlitz by no means contributed to. Based on such thin evidence, the ALJ accorded the District's claim of harassment against a co-worker exactly the weight it was due in rendering her decision.

## C. ANTLITZ'S TERMINATION IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE

The ALJ appropriately concluded based on the evidence presented that there was no just cause to discipline Antlitz for failing to follow instructions regarding the Busse Forest South project. As with all the other claims levied against Antlitz, the District claims they presented a "panoply" of evidence to support a finding of failure to follow instructions, while failing to point to a shred of credible supporting evidence.

Antlitz was heavily involved in the drafting the work order for Busse. (Antlitz Order, pp. 10.) She sought for ash seedlings to be protected in the work order, while Troy Showerman disagreed. *Id.* Through a series of emails a compromise was reached where the work order contained the instructions "to avoid ash seedlings." *Id.* Showerman testified that meant the ash was to be subject to a lesser form of protection, but would have some protection nonetheless. (EAB pp. 59 ¶14-24; Antlitz Order, pp 10.) Once the contract commenced, as part of Antlitz's responsibilities, she conducted site inspections to monitor the ongoing work. (Antlitz Order, pp 11.) She would answer any inquiries the workers had about proceeding under the work order, but any changes had to go through Showerman. *Id.*

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 8 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 8 of 14

The District goes on and on about how Antlitz refused to accept they would not be protecting ash. *Id.* Yet, their own witness acknowledged that work order instructed the ash was subject to some degree of protection. *Id.* Additionally, one of Antlitz's responsibilities in monitoring the site was to make recommendations to the contractors on the best methods for carrying out the work order. *Id.* She briefly discussed the use of hand tools rather than power tools, but dropped it when told that it was not practical. *Id.* There was nothing 'clandestine' about Antlitz attempt to see that the contractors followed the mandates set out in the work order.

The District points to another example of Antlitz causing disruption at the work site to protect ash when she criticized the workers about their cutting of elms and certain ash trees. Antlitz went to the worksite to address questions that had been raised by the District and sent a follow-up email to Showerman and Brenda Occhiuzzo the following day to which she received a response "Copy, thanks." EAB pp. 569. There is no indication of any issues relating to the contractors from this response. In addition, no one from this worksite testified. Antlitz testified that the work was done for the day when she arrived. (EAB pp. 268 ¶¶9-22; 329 ¶¶20-23.) She directed the contractors to the work order when she noticed they had cut elm trees. (EAB pp. 329 ¶14-18.) During that same visit, the workers had questions regarding the cutting of standing dead ash trees, another addition not in the work order. (EAB pp. 280 ¶13-21.) Instead of giving any directives she informed the contractor he needed to speak to Showerman to change the work order. *Id.* Following this encounter, the contractor, who never testified, complained to Showerman that the workers were receiving mixed messages based on Antlitz behavior. (Antlitz Order, pp 11.). The ALJ decorously notes that Antlitz was never contacted to explain her version of the encounter. *Id.* The contractor's was taken at his word and everyone assumed Antlitz was at fault. *Id.* Yet the only evidence they relied to conclude this were emails and hearsay. *Id.*

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 9 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 9 of 14

The District even goes on to claim that Antlitz's disruptions of the contractors caused confusion leading to work stoppages. They provided zero evidence of this claim. They cannot show on what days the workers ceased their work or for what amount of time they ceased their work. Furthermore they have not shown that Antlitz caused any change in the project's budget or schedule through her actions. They just keep reiterating she failed to follow instructions. In the end, the ALJ correctly determined District presented no evidence to support a finding of just cause for discharging Antlitz. What they have done is take the facts and twist them like a pretzel until they fit the story that Antlitz is the villain of this tale, instead of the steadfast and ardent ecologist who merely wants to do her job, rely on documents given to her by her supervisors and protect the forest preserve to the best of her ability. As the record clearly supports the ALJ's decision to reverse Antlitz's termination, the Districts Petition for Administrative Review should be denied.

## II.     ANTLITZ 29-DAY SUSPENSION SHOULD BE REVERSED

### A.  THE EAB'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

In the present case, Antlitz was penalized with a 29-day suspension when it was found that the District met their burden of proving she violated rule 8.03(c)(2), in forwarding an annotated draft with comments to outside third parties. (Antlitz Decision, p. 9.) The ALJ concluded that "She knew or should have known given her long tenure in the District that it was not appropriate to publish the comments and her responses without approval." *Id*. However, concluding the offense was not a "major cause" infraction it was determined that it warranted discipline of a 29-day suspension, based on previous conduct of a similar nature. *Id.*

Under District policy 8.042(c), all discipline shall only be given for just cause. (Antlitz Decision, p. 3.) In determining disciplinary action the ALJ may consider the employees past

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 10 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 10 of 14

conduct and prior warnings given for such conduct. *Id.* Here, the ALJ erroneously found that the forwarding of the draft was similar in conduct to behavior Antlitz was unofficially counselled for in 2015. (Antlitz Decision, p. 10.) In December 2015, Antlitz was unofficially chastised after she cc'ed Steve Byers, from the INPC, on an email where she determined that the project manager conducting a prescribed burn deviated from the work plan she drew up, causing damage to the site. (EAB pp. 97 ¶5-12.) The INPC is the state agency that oversees the nature preserve and it is within their purview to assess damages to nature preserves, such as what occurred there. (EAB pp. 97 ¶18-21.) Based on the facts of the 2015 incident, the ALJ was clearly erroneous in determining that the 2015 incident constituted similar past conduct in viewing the 2016 forwarding of the plan draft.

The ALJ also acknowledged that prior to January 19, 2016, there had been at least two other drafts sent to O'Leary and the other partners outside the District in email chains. (Antlitz Decision, p. 9.) O'Leary **never instructed** Antlitz not to send out the draft document to others, and had himself in the past sent "reply all" to all parties that his comments would be sent on to them. *Id.* The commented draft sent to Antlitz was never marked confidential nor instructed that it not be shared with outside partners as the previous drafts were. *Id.* In spite of these facts, the ALJ concluded that "[Antlitz] knew or should have known given her long tenure in the District that it was not appropriate to publish the comments and her responses without approval." The ALJ determined that Antlitz failed to follow instructions regarding the draft, despite no evidence in the record of any instruction not to share the draft ever being given and the fact that on December 18, 2015 O'Leary responded to all the same people stating he will send on any comments. (EAB 582). In addition, the ALJ made this determination when the District did not even include the email in which O'Leary sent Antlitz his comments as an Exhibit at the hearing.

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 11 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 11 of 14

Finally, it is worth noting that Antlitz was assessed a Disciplinary Action from for this alleged infraction on February 4, 2016, 16 days after the alleged infraction and only 10 days after her performance review in which O'Leary discovered Antlitz had spoken with the Inspector General. The findings of fact are clearly against the manifest weight of the evidence and the penalty of a 29-day suspension against Antlitz must be reversed.

### B. THE DECISION TO IMPOSE A 29-DAY SUSPENSION ON ANTLITZ WAS ARBITRARY AND CAPRICIOUS

The decision to impose a 29-day suspension on Antlitz is arbitrary and capricious because it fails to accord with the District's progressive discipline policy 8.042(d). Progressive discipline is an important corollary of just cause. Progressive discipline is basically a series of disciplinary actions, corrective in nature, starting with a verbal or written reprimand. District policy 8.042(d) sets out the progressive discipline schedule that should have been applied to Antlitz by the ALJ: in general, discipline will include the following steps … oral reprimand, written reprimand, suspension, and discharge. (Antlitz Decision, p. 4.)

The ALJ failed to adhere to the progressive disciplinary schedule laid out above in recommending a 29-day suspension. (Antlitz Decision, p. 10.) In December 2015, Antlitz was counseled in an email regarding the cc'ing of outsiders on District correspondence. *Id*. The facts as laid out in the above section show the lack of correlation between that incident, and the one here. However, even assuming the two events were related, the email sent to Antlitz was not an official reprimand against Antlitz for such behavior. (Antlitz Decision, p. 10.) That means even if we assume Antlitz violated 8.03(c)(2), she would still only be at step one of the progressive disciplinary ladder, warranting only an official oral reprimand for her behavior; not at step three, warranting a suspension, as found by the ALJ. As the decision to penalize Antlitz with a 29-day

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 12 of 14

DELANEY LAW, P.C.
444 N Wabash Ave, Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 12 of 14

suspension was inconsistent with the progressive discipline schedule set out in 8.042(d), it was arbitrary and capricious and must be reversed.

### C.  THE DISCIPLINARY HEARING WAS A PRODUCT OF BAD FAITH BROUGHT NOT FOR CAUSE, BUT TO INTIMIDATE AND HARASS

The best defense is a good offense, and it's clear that the District has taken these words to heart. The entirety of the disciplinary action on which all this is based is the product of a retaliatory scheme initiated by Charles O'Leary and the District against Antlitz. The filing of a Disciplinary Action Form against Antlitz was an act of retaliatory discipline undertaken in bad faith to harass and intimidate Antlitz that followed learning she had contracted the Office of the Inspector General and made O'Leary and the District possibly subject to investigation.

On January 25, 2016, Antlitz met with O'Leary for her yearly evaluation. (EAB pp. 283 ¶24.) At the end of the evaluation Antlitz presented O'Leary with an email from the Inspector General's Office regarding an inquiry she had made with them regarding certain things going on at the FPD. (EAB pp. 286 ¶6-14.) It stated that they were considering opening an investigation into whether O'Leary and the District had violated the Endangered Species Act. *Id.* February 4, 2016, O'Leary issued a Disciplinary Action Form to Antlitz.  (EAB pp. 103 ¶8-13.) Antlitz was charged with improperly forwarding an email of a draft to third parties, interfering with a contractor working on the preserve, and attempting to intimidate O'Leary by showing him the letter that indicated he was the subject of a possible investigation by the Inspector General's office. (EAB pp. 104 ¶9-21.) Her pre-disciplinary hearing was held March 22, 2016 and she received her termination letter on March 28, 2016. (EAB pp. 211 ¶23- 212 ¶5.)

Charles O'Leary made the decision to have Antlitz issued with disciplinary action only nine days after learning she had contacted the Inspector General and they were considering opening an investigation against him. (EAB pp. 103 ¶8-13.) He then made the diabolical decision

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 13 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 13 of 14

to reach back in time to find any and all possible charges, no matter how trumped up they had to be, that could be brought against her in his quest to have terminated. That was when, suddenly out of nowhere, O'Leary took issue with the forwarding of the plan draft to outside parties. Even the ALJ noted "Antlitz was not immediately disciplined for her January 19, 2016 conduct." This trumped up charge was tacked on as the District threw the kitchen sank of unmerited charges against her in hope that one would stick. To sustain any finding in the District's favor would be the same as rewarding them for their bad faith misconduct, and be an abuse of the justice system. The 29-day suspension against Antlitz must be reversed.

**WHEREFORE**, Respondent, DEBORAH ANTLITZ, respectfully requests that this Honorable Court deny District's Petition for Administrative Review, and grant Respondent's Petition for Administrative review reversing the EAB's decision to issue a 29-day suspension to Ms. Antlitz.

<div style="margin-left:2em">

Respectfully Submitted,

By: /s/ Cynthia M Rote

Attorney for DEBORAH ANTLITZ

</div>

Delaney Law, P.C.
Atty N. 44350
service@delaney-law.com
444 North Wabash Avenue, Ste. 300
Chicago, Illinois 60611
(312) 276-0263

ELECTRONICALLY FILED
6/9/2017 11:11 AM
2016-CH-14861
PAGE 14 of 14

DELANEY LAW, P.C.
444 N Wabash Ave., Third Floor
Chicago, Illinois 60611
(312) 276-0263

Opening Brief and Brief in Response to Forest
Preserve District's Petition for Administrative Review
Case No. 16-CH-14861 and No. 16-CH-15524

Page 14 of 14